# STATE OF MICHIGAN

# COURT OF APPEALS

RACHEL SMITH,

       Plaintiff-Appellant,

v

ONTAIS JENKINS JOHNSON, MONIQUE
NICOLE SMITH, PROGRESSIVE MICHIGAN
INSURANCE COMPANY, and WEST BEND
MUTUAL INSURANCE COMPANY,

       Defendants-Appellees.

UNPUBLISHED
April 13, 2017

No. 329285
Genesee Circuit Court
LC No. 13-101299-NI

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

GADOLA, J. (*dissenting*).

In this action for non-economic damages under the no-fault act, MCL 500.3101 et seq., the trial court granted summary disposition to defendant insurers pursuant to MCR 2.116(C)(10) finding that plaintiff had failed to establish a genuine issue of material fact with respect to whether the injuries she allegedly sustained in an automobile accident affected her general ability to lead her normal life. Because I disagree with the conclusion of the majority opinion that the trial court incorrectly reached this decision, I respectfully dissent.

This case arises from a motor vehicle accident that occurred on June 10, 2011. Plaintiff was a passenger in a car driven by her husband; their car was proceeding through an intersection when it was hit by another vehicle. Neither the owner nor the driver of the other car was insured and consequently, plaintiff brought this action against defendant insurers for uninsured motorist benefits.

Plaintiff has a history of chronic back and neck pain and incapacity resulting from those conditions. In 2009, she began to receive regular medical care to address her symptoms of neck and back pain, cervical radiculopathy, anxiety, and sleeplessness; plaintiff related these symptoms to a 2006 vehicle accident. Plaintiff continued to receive care for her back and neck pain from her treating physician throughout 2010, and into 2011. In March 2011, an EMG showed "cervical paraspinal denervation with radiculopathy at C5-C6 roots." An MRI showed cervical spondylosis. Her treating physician excused her from work from April 18, 2011 to April 29, 2011 due to "severe neck and shoulder pain on both sides."

On April 25, 2011, plaintiff began treating with a new physician for "bilateral back, neck, leg and arm pain" which plaintiff contended was exacerbated by "exercising, sitting, standing, walking, bending, pushing, pulling, squatting, lying down and coughing." At that time, plaintiff asserted that as a result of her pain she could not do her job as a preschool teacher, nor could she engage in housework, yard work, or other daily activities. Plaintiff testified that although in the past she had participated in recreational activities such as motorcycling, bowling, tennis, basketball, and track, she stopped these activities after her back pain necessitated her being excused from work. Plaintiff's new physician excused her from work for six weeks ending on June 6, 2011, and on May 25, 2011, extended the time off work for three more months.

The accident occurred on June 10, 2011. After the accident, plaintiff continued to treat with her physician for back pain, and also attended physical therapy. The therapist's records from her June 28, 2011 appointment report that plaintiff's "recent pain was begun in February 2011 and since has not improved," but make no mention of the June 10, 2011 accident. Plaintiff now contends that she has serious impairment of body function arising from the June 10, 2011 accident and seeks non-economic damages as a result.

Under the no-fault act, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). A serious impairment of body function is defined by the act as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Our Supreme Court has described this as a three-pronged test in which the person asserting the claim must establish "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). When there is no factual dispute regarding the nature and extent of the plaintiff's injuries material to determining when these threshold standards are met, the threshold question of whether a plaintiff has suffered a serious impairment of body function is a question of law for the trial court. *Id.* at 193.

In this case, for purposes of the motion for summary disposition, the parties dispute only whether plaintiff established the third prong of the test, that is, whether the injuries allegedly arising from the June 10, 2011 accident affect her general ability to lead her normal life. That determination requires a comparison of plaintiff's life before and after the incident in question. *Id.* at 202. To prevail, plaintiff must demonstrate that some of her *general ability* to live in her normal manner has been affected, not that some of her normal manner of living has itself been affected. *Id.* at 202. "General" as used in the statute modifies "ability." *Id.* at 202. As explained in *McCormick*, "'general' does not refer to only one specific detail or particular part of a thing, but, at least some parts of it." *Id.* at 201. The inquiry is subjective and case specific, and does not require a specific temporal showing or a "quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id.* at 203.

In this case, the majority opinion concludes that the trial court erred by focusing on the causation of plaintiff's limitations rather than upon the subjective nature of plaintiff's life before and after the accident. I disagree. The trial court record demonstrates that the trial court was clearly focused on the third prong of the *McCormick* test. The trial court properly compared

plaintiff's life before the June 10, 2011 accident to her life after the accident and determined that plaintiff had failed to present evidence creating a genuine issue of material fact regarding whether her injuries allegedly arising from the accident affect her general ability to lead her normal life. Before the June 10, 2011 accident, plaintiff reported to her doctor that her pain was exacerbated by "exercising, sitting, standing, walking, bending, pushing, pulling, squatting, lying down and coughing." Plaintiff informed her doctor that she could not do her job as a preschool teacher, nor could she do housework, yard work, or "daily activities." She was unable to engage in her previous recreational activities. Before the June 10, 2011 accident, plaintiff had been restricted from work, and on May 25, 2011, plaintiff's treating physician excused plaintiff from work for three additional months.

After the June 10, 2011 accident, plaintiff contended that she could not return to her job, could not do housework or yard work, could not participate in recreational activities, and needed assistance with daily activities such as basic hygiene. Comparing plaintiff's life before the June 10, 2011 accident to her life after the accident, there is virtually no difference in her general ability to lead her normal life. The only difference is that plaintiff contends that she now needs assistance with basic hygiene and getting out of bed, whereas before the accident she stated that she could not perform "daily activities" but did not specifically define the activities to include hygiene and getting out of bed. These differences do not constitute an appreciable change in plaintiff's general ability to lead her normal life.

Because our analysis must focus upon plaintiff's *general* ability to lead *her* normal life, and because there is virtually no difference in plaintiff's life after the accident from before the accident, plaintiff failed to show that there was a genuine issue of material fact on the threshold question of whether her general ability to lead her normal life was affected by any injuries allegedly sustained in the June 10, 2011 accident. Plaintiff therefore is not legally entitled to recover from the uninsured motorist, and defendant insurers were entitled to summary disposition. I therefore would affirm.


/s/ Michael F. Gadola